UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

ADRIAN FERNANDO GOMEZ,
                           Plaintiff,

               -v-

JAMES MCHENRY, *et al.*,
                           Defendants.

19-CV-7373 (JPO)

OPINION AND ORDER

---------------------------------------------------------

J. PAUL OETKEN, District Judge:

      Petitioner Adrian Fernando Gomez is a Colombian citizen and lawful permanent resident of the United States. (Dkt. No. 41 at 2.) In December 2017, U.S. Immigration and Customs Enforcement ("ICE") arrested Gomez and placed him in removal proceedings. (Dkt. No. 41 at 4.) His removal proceedings remain pending. (Dkt. No. 41 at 7.) This is a case about whether, during the pendency of his removal proceedings, Gomez must be detained on no bond, pursuant to a May 2, 2019 decision of the Board of Immigration Appeals ("BIA") that assessed Gomez as a danger to the community. (*See* Dkt. No. 1-3.)

      In his petition to this Court, Gomez sought relief from the BIA decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Due Process Clause, and the Mandamus Act, 28 U.S.C. § 1361. (*See* Dkt. No. 1.) Now before the Court are Gomez's and the Government's competing motions for summary judgment. (Dkt. No. 40; Dkt. No. 42.) For the reasons that follow, Gomez's motion for summary judgment is granted, and the Government's motion is denied.

**I.    Background**

      Gomez entered the United States as an infant in 1989, and he grew up in the United States. (Dkt. No. 43 at 2.) His family lives in New York State. (*Id.*)

Gomez's criminal history began in 2007, when he was charged with burglary in the third degree and criminal trespass in the second degree. (Dkt. No. 1-2 at 2.) Gomez pleaded guilty to burglary and was sentenced to conditional discharge. (*Id.*) An order of protection was issued in favor of his partner, Silvia. (*Id.* at 2–3.) Gomez was arrested for violating that protective order and for assaulting Silvia four times between 2010 and 2013. (Dkt. No. 1-2 at 2–3.)

While incarcerated as a result of his 2013 arrest, Gomez made a concerted effort to address his "alcohol problem." (Dkt. No. 1-2 at 3.) He enrolled in a rehabilitation course in prison and "committed to a sober lifestyle" upon his release. (*Id.*) Silvia affirmed that, when Gomez returned, he was "a changed person" who was "no longer aggressive." (Dkt. No. 1-4 at 21 ¶¶ 8, 11 (Silvia Gomez's affidavit).) Silvia also affirmed that she had "changed a lot" since 2013 and that she, too, had overcome her alcoholism. (Dkt. No. 1-4 at 20 ¶ 4.) Intent on "putting the past behind [them]," Silvia and Gomez wedded on June 14, 2015. (Dkt. No. 1-4 at 21 ¶ 8.) They now have a young daughter together. (*Id.*)

In 2016, Gomez was again arrested for assault. (Dkt. No. 1-2 at 3.) Gomez informed the Immigration Judge ("IJ") that this incident involved a dispute with his landlady, not Silvia. (Dkt. No. 1-2 at 3; Dkt. No. 1-3.) The charges from the 2016 incident were dismissed. (Dkt. No. 1-2 at 3.) Finally, in 2017, Gomez was arrested for bail jumping, after he failed to appear at a hearing. (*Id.*) The charges from this incident were also dismissed. (*Id.*) Gomez's convictions all relate to his relationship with Silvia, and his last conviction was in 2013. (Dkt. No. 1-2 at 2–3.)

On December 27, 2017, ICE arrested Gomez and charged him as removable based on his prior convictions. (Dkt. No. 41 at 4.) ICE determined that Gomez was subject to mandatory detention and not eligible for bond. (*Id.*) The IJ disagreed on all scores: On May 22, 2018, the

IJ concluded that Gomez's convictions did not render him removable and terminated his removal proceedings.  (*Id*.)  ICE promptly appealed that decision.  (*Id*.)  On July 19, 2018, the IJ concluded that Gomez was neither a danger to the community nor a flight risk and should be released on a $7,000 bond during the pendency of ICE's appeal and whatever removal proceedings may follow.  (Dkt. No. 1-2 at 4.)  ICE appealed that decision as well.  (Dkt. No. 41 at 6.)

On May 2, 2019, the BIA sustained ICE's appeal and vacated the IJ's bond decision, on the basis that Gomez was a danger to the community.  (Dkt. No. 1-3.)  The BIA ordered Gomez detained "on no bond."  (*Id*.)  Gomez's petition to this Court followed.  (Dkt. No. 1.)  On November 21, 2019, the Government filed the Certified Administrative Record with respect to Gomez's bond hearing, displacing the need for discovery in this case.  (Dkt. No. 39.)  The parties' competing motions for summary judgment followed shortly thereafter.  (Dkt. No. 40; Dkt. No. 42.)

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When "a party seeks review of agency action under the APA, the 'entire case on review is a question of law,' such that 'judicial review of agency action is often accomplished by filing cross-motions for summary judgment.'" *Just Bagels Mfg., Inc. v. Mayorkas*, 900 F. Supp. 2d 363, 372 (S.D.N.Y. 2012) (alteration and citation omitted).  Serving in an appellate role, the district court must "decid[e], as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014) (quoting *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012)),

*aff'd*, 793 F.3d 106 (D.C. Cir. 2015).

**III.   Discussion**

In his petition, Gomez brought claims for relief under the APA, the Due Process Clause, and the Mandamus Act.  The Government opposes relief on any of these grounds in its motion for summary judgment.  Evidently abandoning his mandamus claim, Gomez defends and seeks summary judgment only on the APA and Due Process claims.

With respect to the APA claim, Gomez argues that the BIA applied the wrong standard of review in overturning the IJ's decision to set bail at $7,000.  He contends that, although the BIA articulated the correct standard of review — that the IJ's findings of fact are subject to review for clear error and its discretionary determinations are subject to *de novo* review — its articulation was perfunctory and no more than lip service.  (Dkt. No. 43 at 3.)  Gomez identifies three supposed findings of fact that he contends the BIA improperly reviewed *de novo*: whether the 2016 assault involved Silvia; whether Gomez has exhibited genuine rehabilitation; and whether Gomez has established that he no longer presents a danger to the community.  Gomez separately challenges the BIA's decision insofar as it relies on *Matter of Siniasukas*, 27 I. & N. Dec. 207 (BIA 2018), to support the proposition that "family ties" and "participation in an interfaith community organization" "relate to flight risk, not dangerousness."  (Dkt. No. 1-3.)  Gomez argues that the BIA "misconstrue[d]" *Matter of Siniasukas* by using the case to categorically disregard facts relied upon by the IJ that bear on Gomez's likelihood of recidivating.  (Dkt. No. 43 at 13.)

With respect to the APA claim, the Government contests both the Court's jurisdiction and the claim's merits.  Jurisdiction and the merits of the APA claim are discussed in turn.

4

### A.     Jurisdiction

The Government argues that Gomez's claims "are not cognizable" because they "amount to nothing more than a challenge to the BIA's discretionary judgment" and are thus jurisdictionally barred pursuant to 8 U.S.C. § 1226(e). (Dkt. No. 41 at 17.)  Although § 1226(e) provides that the BIA's "discretionary judgment" regarding "the grant, revocation, or denial of bond" "shall not be subject to review," it does not insulate the BIA's bond decisions from purely legal challenges. *Lantigua v. Decker*, No. 17-cv-4880, 2017 WL 5054567, at *2 (S.D.N.Y. Oct. 27, 2017) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2013)); *see also Nielsen v. Preap*, 139 S. Ct. 954, 961–62 (2019).  Rather, § 1226(e) precludes jurisdiction only when a petitioner challenges the BIA's "weighing [of] factors relevant to the grant or denial of discretionary relief."  *Guyadin v. Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006); *see also Lantigua*, 2017 WL 5054567, at *2.

The Court has jurisdiction over Gomez's APA claim insofar as it actually addresses the BIA's failure to review the IJ's factual findings for clear error.  *See* 8 C.F.R. 1003.1(d)(3)(i) ("Facts determined by the immigration judge . . . shall be reviewed only to determine whether [they] are clearly erroneous.").  As relevant, Gomez highlights the IJ's findings that (1) his 2016 arrest "arose out of a dispute with his landlady" and (2) he "has established genuine rehabilitation." (Dkt. No. 1-2 at 3.)  Gomez does not suggest that the BIA placed too much emphasis on the 2016 arrest or too little emphasis on his rehabilitation.  *Cf Wallace v. Gonzales*, 463 F.3d 135, 140–41 (2d Cir. 2006) (dismissing a petitioner's "abuse of discretion claim disguised as a question of law" when the BIA decision at issue assessed that "the IJ 'erred in finding adequate evidence of rehabilitation which would *outweigh* the negative criminal history'" (internal quotations omitted) (emphasis added)).  Instead, Gomez contends that the BIA

5

impermissibly second-guessed the IJ's findings when it stated that "he did not submit any documentary [evidence] to support his claim" regarding the 2016 arrest and that he "lack[ed] objective documentary evidence establishing genuine rehabilitation." (Dkt. No. 1-3.) This is properly construed as a legal challenge over the standard of review used by the BIA. *See Wu Lin v. Lynch*, 813 F.3d 122, 129 (2d Cir. 2016) ("The BIA's application of 'clear error' review is the application of a legal standard to findings of fact and as such is a ruling of law.").

The Court also has jurisdiction over Gomez's APA claim insofar as it addresses the BIA's misunderstanding, not unfavorable balancing, of the pertinent factors that may undergird a bond decision. Here, Gomez highlights the BIA's statement that "concerns [about family and community ties] relate to flight risk, not dangerousness. *See e.g. Matter of Siniauskas* [sic], 27 I. & N. Dec. 207 (BIA 2018)." (Dkt. No. 1-3.) The BIA did not state that, in Gomez's particular circumstance, his family and community ties should have no bearing on its assessment of his dangerousness. It described how family and community ties should be treated, as a matter of course, based on BIA precedent. Notably, Gomez's argument is not that the "BIA misread, misunderstood, or misapplied the law *in weighing factors* relevant to the grant or denial of discretionary relief." *Guyadin*, 449 F.3d at 468 (emphasis added). It is that the BIA misstated the holding in *Matter of Siniasukas*, thereby misapprehending the scope of its discretion and believing itself wholly precluded from weighing certain factors that pertain to Gomez's likelihood of recidivating. This issue raises a question of law, not one of discretion.

Still, the Government's jurisdictional challenge succeeds in one regard: The Court lacks jurisdiction to assess whether the BIA applied the wrong standard of review with respect to its conclusion that Gomez "poses a danger to persons or property." (Dkt. No. 1-3.) In its July 19, 2018 decision, the IJ "found . . . that [Gomez] is not a danger to the community." (Dkt. No. 1-2

6

at 4.)  Gomez insists that this was a factual finding subject to clear-error review.  He cites *Matter of Z-Z-O*, a case holding that an IJ's "predictive findings of what may or may not occur in the future are findings of fact, which are subject to a clearly erroneous standard of review."  26 I. & N. Dec. 586, 590 (BIA 2015).  *Matter of Z-Z-O*, however, was about how the BIA should review an IJ's forecast of whether a non-citizen will be persecuted if returned to their country of origin.  *Id*. at 589–90.  Such a forecast is the factual underpinning of the "legal determination" of "whether an asylum applicant has established an objectively reasonable fear of persecution," but it is separate from the legal determination itself — which "remains subject to de novo review."  *Id*. at 590–91.  So too in this context are the factual underpinnings of whether a non-citizen presents a danger to the community separate from the discretionary determination itself.  *See Agoro v. District Director for Immigration & Customs Enforcement*, 403 F. App'x 536, 537 (2d Cir. 2010) (referring to the "discretionary release" of non-citizens "deemed not to be a danger or flight risk"); *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (referring to an IJ's "broad discretion" to weigh factors that bear on whether a non-citizen "merits release from bond, as well as the amount of bond that is appropriate").  In other words, the IJ did not find, *per se*, that Gomez would not present a danger; it discretionarily determined as much, based on its factual findings regarding his previous criminal history, rehabilitation, and family and community ties.  *See Wu Lin*, 813 F.3d at 129 (acknowledging that courts and agencies occasionally "say that they 'find' that something is so . . . even though they are not finding a fact but, instead, stating a ruling of law [or discretion]").  In challenging the BIA's determination that he presents a danger to the community, Gomez challenges not the BIA's lack of deference to the IJ's fact-finding but rather the BIA's weighing of the pertinent facts.  This is a matter of "discretionary judgment" over which the Court lacks jurisdiction.  8 U.S.C. § 1226(e).

**B.     The Merits**

With respect to Gomez's APA claim, the Court considers whether the BIA's decision was "arbitrary, capricious, . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although review of agency decisions typically is "particularly deferential," *Erie-Niagara Rail Steering Comm. v. Surface Transp. Bd.*, 247 F.3d 437, 441 (2d Cir. 2001), "no such deference is due when the agency's decision rests on legal error." *Li v. I.N.S.*, 453 F.3d 129, 137 (2d Cir. 2006). As discussed, Gomez's APA claim revolves around his contention that the BIA committed legal error in two regards: (1) it applied the wrong standard of review to the IJ's fact-finding and (2) it misapprehended the scope of its discretion to consider certain facts relied upon by the IJ.

In reviewing the questions of law Gomez raises, the Court acts as an appellate tribunal and applies such a tribunal's "traditional approach to reviewing a ruling of law — *de novo* review." *Wu Lin*, 813 F.3d at 129; *Hill Dermaceuticals, Inc. v. F.D.A.*, 709 F.3d 44, 46 n.1 (D.C. Cir. 2013). As the Second Circuit has explained, *de novo* review in the context of determining whether the BIA in fact subjected an IJ's factual findings to clear-error review "does not mean that [courts] can redetermine *de novo* whether [they] think the IJ has committed clear error." *Wu Lin*, 813 F.3d at 129. "It means that [courts] must determine whether the BIA has provided sufficient justification for its conclusion that the IJ has committed clear error." *Id*. A sufficient justification for departing from the IJ's factual findings provides "specific, cogent reasons" as support. *Id*. (internal quotation marks and citation omitted). In the absence of such reasons, reviewing courts assume that the BIA conducted an improper *de novo* review of the facts. *Id*. at 130–31.

The BIA's decision does not provide any specific, cogent reasons for departing from the IJ's factual findings. The IJ found that the 2016 arrest "arose out of a dispute with [Gomez's] landlady," not Silvia, based on Gomez's representations. (Dkt. No. 1-2 at 3.) Although the IJ made no adverse credibility finding against Gomez and chose to credit his representations, the BIA on its own accord cast doubt on the IJ's finding regarding the 2016 arrest. (Dkt. No. 1-3.) Its justification for doing so was that Gomez "did not submit any documentary [evidence] to support his claim." (*Id.*) That is not enough. The BIA did not identify any inconsistency between the IJ's finding and other record evidence, or even attempt to explain why the IJ's finding was mistaken. *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). The BIA did not apply the correct standard of review with respect to the 2016 arrest.

Similarly, the BIA discounted the IJ's finding that Gomez had "established genuine rehabilitation" (Dkt. No. 1-2 at 3), citing the "lack [of] objective documentary evidence" on the matter. (Dkt. No. 1-3.) The IJ's finding was based on the facts that Gomez had addressed his alcohol problem, attended couple's counseling with Silvia, rebuilt his relationship with Silvia, and gone more than five years without any convictions. (Dkt. No. 1-2 at 3.) The IJ credited and extensively cited Silvia's affidavit, in which Silvia described Gomez as "a good father and a good husband" who had moved past their previous "unhealthy relationship . . . caused by . . . substance abuse and provocation." (*Id.*) The BIA did not explain why the IJ was wrong to rely on Silvia's affidavit, Gomez's recollection of his relationship with alcohol, or Gomez's lack of convictions postdating 2013 to identify genuine rehabilitation. *See Sherpa v. Holder*, 374 F.

9

App'x 104, 105 (2d Cir. 2010) (holding that the BIA used the wrong standard of review when it "concluded that [the petitioner's] explanations were inadequate, but it did not refute, or even acknowledge, the IJ's reasons for crediting those explanations"). If the BIA were engaging in a *de novo* review of the facts, its simple disagreement with the IJ could suffice and warrant departure from the IJ's findings. Not so for a clear-error review. Here, too, Gomez successfully argues that the BIA applied the wrong standard of review.

Finally, the BIA categorically dismissed the IJ's finding that Gomez's likelihood of recidivism was "diminishe[d]," in light of his "responsibility for providing for [his family's] needs" and his "strong ties to his community," particularly an interfaith organization. (Dkt. No. 1-2 at 3–4.) Citing *Matter of Siniasukas*, the BIA suggested that it was precluded from considering Gomez's family and community ties in assessing whether he would present a danger to the community. (Dkt. No. 1-3.) *Matter of Siniasukas*, however, does not stand for that proposition. Although the case states that "family and community ties generally do not mitigate . . . dangerousness," it expressly contemplates the possibility that a non-citizen may "show[] how his family [or community] circumstances would mitigate his history" of criminal conduct. 27 I. & N. Dec. at 210. Consistent with *Matter of Siniasukas*, the IJ explained why Gomez's family and community ties were probative of his likelihood of recidivating and how they gave "him a purpose and a reason not [to] engage in violent behavior." (Dkt. No. 1-2 at 3.) The BIA did not disagree with the IJ's specific analysis, nor did it say that Gomez's family and community ties were overshadowed by his criminal history. As Gomez argues, the BIA's interpretation of *Matter of Siniasukas* was an "unambiguous misstatement of the law," *Zabaleta v. Decker*, 331 F. Supp. 3d 67, 73 (S.D.N.Y. 2018), and the BIA misapprehended its discretion to consider factors that may pertain to Gomez's dangerousness.

10

The BIA's review of the IJ's decision conflicted with established law, and the Court "cannot determine whether, absent those errors, the BIA would have reached the same conclusion." *Id*. at 73 (granting a petition that brought an APA claim against a BIA bond decision). As is the practice of the Second Circuit, the Court holds that these legal errors require remand of Gomez's case. *See, e.g, Chen v. Bureau of Citizenship & Immigration Servs.*, 470 F.3d 509, 515 (2d Cir. 2006) (holding that the BIA's *de novo* review of the IJ's factual findings "constitutes legal error by the BIA requiring remand"); *Sherpa*, 374 F. App'x at 106 (accord). "On remand, the BIA will have to either accept the IJ's findings or, if it can, provide a supportable basis for rejecting them." *Wu Lin*, 813 F.3d at 131.

Because Gomez is entitled to full relief on his APA claim, the Court does not reach his Due Process or mandamus claims.[1]

## IV. Conclusion

For the foregoing reasons, Gomez's motion for summary judgment is GRANTED and the Government's motion for summary judgment is DENIED. Accordingly, the BIA's May 2, 2019 decision is hereby VACATED and this matter is REMANDED for further proceedings consistent with this opinion. The Clerk of Court is directed to close the motions at Docket Numbers 40 and 42 and to close this case.

SO ORDERED.

Dated: October 30, 2020
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[1] Although the Court does not reach Gomez's Due Process claim, it notes that Gomez likely would prevail under the Second Circuit's recent *Velasco Lopez v. Decker* decision. _ F.3d _, 2020 WL 6278204 (2d Cir. 2020). The *Velasco Lopez* panel held that "the Government [must] prove that [a petitioner] is a danger to the community or a flight risk by clear and convincing evidence." *Id*. at *10. Here, the BIA evidently placed on Gomez the "burden of demonstrating that he is not a danger to the community." (Dkt. No. 1-3.)

11